## EDWARDS v. SARTOR.

ALTERATION OF INSTRUMENTS—INTEREST—NOTE—MORTGAGE.—Where a note secured by a mortgage providing for ten per cent. interest is by indorsement of holder changed to draw eight per cent., and this indorsement is by him erased, the note is thereby annuled, and cannot be referred to by reason of references thereto in the mortgage to fix the rate of interest on the mortgage debt, but that debt draws interest at seven per cent.

Before W. C. BENET, special Judge, Union, November, 1903.    Reversed.

Foreclosure by J. C. Edwards against C. C. Sartor. From Circuit decree, defendant appeals.

*Messrs. James Monroe* and *D. E. Hydrick,* for appellant. The latter cites: *Cancellation of agreement to make note draw eight per cent. avoids it, and seven per cent. can only be collected on mtg. debt:* 2 Bail., 359; Spear's Eq., 142; 14 S. C., 355; 19 S. C., 263; 27 S. C., 166; 28 S. C., 416; 32 S. C., 239; 2 Ency., 2 ed., 187, 190, 237-8, 262, 204; 2 Cyc., 181; Chitty on Bills, 219; 2 Pars. on Con., 571; 1 N. H., 95; 49 Ia., 1; Chev. Eq., 1; 17 S. C., 466.

*Messrs. V. E. DePass* and *Stanyarne Wilson,* contra, cite: *Can void note be referred to to ascertain interest on debt?* Jones on Mtgs., secs. 71, 72, 73, 351, 352, 355.    *Usury law not being pleaded cannot be relied on:* 56 S. C., 89; 39 S. C., 193.

August 13, 1904.    The opinion of the Court was delivered by

MR. JUSTICE WOODS. This action for foreclosure was brought on a sealed note and mortgage given by defendant to plaintiff. The note was in these words:

"$1,288.80. On or before the first day of November, A. D. 1885, I promise to pay J. C. Edwards the sum of one thousand two hundred and eighty-eight and 85-100 dollars. Value received. Interest from date at the rate of ten per centum per annum payable annually until the whole debt is paid. Witness my hand and seal this 7th day of Feby., 1885. C. C. Sartor. (Seal.)"

After several payments had been made, the plaintiff agreed to reduce the interest from ten per cent. to eight per cent., on defendant's statement that unless this reduction was made he would borrow elsewhere at the lower rate and pay the debt. In pursuance of the agreement, plaintiff made this indorsement on the note:

"I agree to take eight per cent. on the within note from January 21, 1891. J. C. Edwards."

In his complaint he alleges this contract was without consideration, and that because of defendant's refusal to sign it as he had agreed to do, "plaintiff cancelled said entry by running three pencil marks over the same." Referring to this allegation, the plaintiff testified he notified defendant of his intention to cancel the agreement for the reason above stated, and defendant made no response. Defendant denies that he was ever requested to sign the agreement, or that he had any notice of its cancellation until some time afterward, when plaintiff insisted on the payment of interest at the original rate of ten per cent.

It is admitted by the plaintiff that the note was annulled by the cancellation, and by the defendant that the mortgage may be foreclosed notwithstanding the cancellation of the note. The sole question is whether the interest is to be computed at the rate stipulated in the note, or at seven per cent., the legal rate provided in the absence of written contract for a different rate.

The cause was referred to J. A. Sawyer, Esq., special

master, who reported the computation should be made at seven per cent. The Circuit Court reversed this finding, and ordered foreclosure for the amount stated in the mortgage, less the credits, with interest computed at ten per cent.

The agreement for the reduction of the rate of interest was supported by the consideration that the defendant would defer payment of the debt, and the defendant's signature was not necessary to its validity. By virtue of this agreement, there was, therefore, before the cancellation, a valid note bearing eight per cent. interest, and the agreement to pay ten per cent. was forever at an end. The only reference in the mortgage to the rate of interest is that contained in this clause: "Provided always, nevertheless, and it is the true intent and meaning of the parties to these presents, that if I, the said C. C. Sartor, do and shall well and truly pay, or cause to be paid, to the said J. C. Edwards the said debt, or sum of money aforesaid, with interest thereon, if any shall be due, according to the true intent and meaning of the said note and condition thereunder written." This is a contract that the mortgage debt shall be ascertained by calculation at the rate mentioned in the note. Any valid change of the rate in the note would affect the mortgage also. Clearly, therefore, the mortgage could not be computed at ten per cent. after the rate in the note had been reduced by agreement to eight per cent.

But the note having been entirely annulled by the cancellation of the written agreement to reduce the interest, the question remains whether it may be referred to at all as evidence of the rate at which the mortgage debt should be computed. The policy of the law in holding written contracts annulled when altered by an interested party, is founded largely on the importance of preserving such contracts inviolate. This policy would be in great measure defeated if when so annulled such papers could be used to supplement another contract. After the alteration the note had no legal existence. It involves a contradiction, to say it has no life itself as a contract, but may be used as a part of the mortgage

contract and thus become a basis of recovery. The rate of interest cannot be fixed by a note which has been destroyed by alteration. 2 Cyc., 181. No rate is mentioned in the mortgage, and the plaintiff can only recover seven per cent.

The judgment of this Court is, that the judgment of the Circuit Court be reversed and the report of the master confirmed.